WALTER J. ROTHSCHILD, Judge.
|2Pefendant, Freddie Banks, was charged by bill of information with possession of a firearm by a convicted felon in violation of LSA-R.S. 14:95.1 (Count 1) and possession of heroin between 200 and 400 grams in violation of LSA-R.S. 40:966 C (Count 2).[1] At his arraignment on September 21, 2009, he pled not guilty and subsequently filed a motion to suppress the evidence. The trial court denied the motion on May 12, 2011, and defendant filed a writ application -with this Court from this ruling. This Court refused to exercise its supervisory jurisdiction and found that defendant could re-urge this issue on appeal in the event of a conviction. State v. Banks, ll-K-601 (La.App. 5 Cir. 6/17/11) (unpublished writ disposition).
Thereafter, defendant withdrew his not guilty pleas and pled guilty as charged under State v. Crosby, 338 So.2d 584 (La.1976), reserving his right to ^appeal the trial judge’s denial of his motions to sup *512 press. The trial judge sentenced defendant on Count 1 to imprisonment at hard labor for 15 years without benefit of parole, probation, or suspension of sentence, and on Count 2 to imprisonment at hard labor for 15 years. Defendant now appeals on the basis of two assignments of error relating to the ruling on his motion to suppress.
The following facts were elicited at the suppression hearings held on April 7, 2010, and April 6 and 28, 2011:
Detective William Roniger of the Jefferson Parish Sheriffs Office (JPSO) received a tip from a confidential informant that a tall black male in his thirties was selling heroin from his residence at 3251 Wall Boulevard, Apartment # 3405, at the Calypso Bay apartment complex in Harvey. The confidential informant told Detective Roniger he had firsthand knowledge of this information. Additionally, the confidential informant, an individual with whom Detective Roniger was personally acquainted, had previously proven to be reliable and credible, and his information had led to more than 20 arrests and several convictions.
On August 5, 2009, Detective Roniger set up surveillance of that location in an attempt to corroborate the confidential informant’s tip. During that surveillance, at approximately 6:00 p.m., co-defendant, Ronald Kinsey,[2] arrived at the apartment, where he engaged in suspicious behavior before going inside. Mr. Kinsey remained in his car for an extended period of time while parked in front of the residence, continually looking over both shoulders as if he was attempting to spot surveillance by the police. He subsequently went inside the apartment where he stayed a very short amount of time, and then left. Mr. Kinsey also circled his vehicle either before he entered or after he exited the apartment.
14After Mr. Kinsey got into his vehicle and left, officers followed him and conducted a traffic stop, because Mr. Kinsey was speeding and not wearing a seat belt. Detective Roniger questioned Mr. Kinsey at a Discount Zone gas station/convenience store at the corner of Lapalco and Wall Boulevard, the location of the stop. He thought that the apartment complex in question was in close proximity to that corner. Detective Roniger ultimately found 64 grams of heroin in Mr. Kinsey’s possession.
After Mr. Kinsey was arrested, Detective Zeagler reestablished surveillance of the residence in question. A short time later, he observed a tall black male in his mid-thirties arrive at the residence and enter it. Members of Detective Roniger’s narcotics group entered the residence to secure it prior to obtaining a search warrant, because they feared that someone would contact the occupants of the apartment and advise them of Mr. Kinsey’s arrest; however, the officers did not search the apartment at that time.
Detective Roniger applied for and obtained a search warrant for defendant’s residence. During the execution of the search warrant, Detective Roniger found approximately 220 grams of heroin and paraphernalia associated with distribution of heroin, including a syringe, three burnt spoons, a large digital scale, and two 200-gram weights in a black gym bag in the kitchen; a loaded Taurus .357 handgun in a chest of drawers in the master bedroom; approximately $315,000.00 in cash in the air conditioning vent in the hallway; four *513 working cell phones; two ledgers; a picture of defendant, three boxes of clear plastic bags; and numerous bottles of “Manita” and a bottle of Inositol. Detective Roniger advised defendant of his rights, and defendant indicated he understood them. Afterward, defendant gave a taped statement to the detective.
| r,Ronald Kinsey testified at the suppression hearing that on August 5, 2009, he arrived at 3251 Wall Boulevard, Apartment # 3405, at some time in the evening, where he stayed approximately an hour to an hour-and-a-half. He further testified that he used his key to get in, and that no one else was in the apartment. Mr. Kinsey explained that he left the apartment, after which the police stopped him in his vehicle by the Discount Zone and questioned him for approximately an hour. He asserted that he could not see the apartment complex in question from the Discount Zone. He also asserted that he had not seen defendant that day.
After hearing the testimony at the suppression hearings, the trial judge said he would take the matter under advisement. The trial judge subsequently denied the motions to suppress in a written order, giving lengthy reasons for judgment.
In that order, the trial judge found that both probable cause and exigent circumstances existed to satisfy the criteria set forth in Kirk v. Louisiana, 536 U.S. 635, 122 S.Ct. 2458, 153 L.Ed.2d 599 (2002)[3] to justify the JPSO’s warrantless entry into the apartment. The trial judge further found that based on a totality of circumstances, there was a substantial basis upon which to find probable cause to issue the search warrant. He noted that the probable cause was based on the informant’s tip, showing firsthand knowledge of criminal activity at the address, independently established by surveillance of the address, including Mr. Kinsey’s suspicious actions and his circling, arrival and quick departure as well as his later arrest with a large quantity of heroin in his possession.
The trial judge further found that based on Detective Roniger’s testimony that defendant arrived back at the apartment shortly after Mr. Kinsey was detained by the police, the police had a reasonable belief that evidence would be destroyed, Rand that the police were justified in making a warrantless entry to secure the apartment until a warrant could be obtained.
By this appeal, defendant argues that the trial judge erred by denying his motion to suppress the evidence. He contends that the application for the search warrant did not set forth sufficient facts to establish probable cause. Defendant notes that the search warrant did not state how the confidential informant learned the information that he supplied to the police. He further notes that the police saw only one person enter and exit the residence which did not indicate a pattern, there was no controlled buy, and the informant did not provide a specific description of the suspect or the suspect’s name. The State responds that based on the totality of the circumstances and a common sense reading of the affidavit, the magistrate’s assessment of the supporting affidavit was reasonable, as he had a substantial basis for concluding that probable cause existed for the issuance of the search warrant.
The Fourth Amendment to the United States Constitution and Article 1, § 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. State v. *514 Thomas, 08-390, p. 6 (La.App. 5 Cir. 1/27/09), 8 So.3d 80, 83, writ denied, 09-0626 (La.11/25/09), 22 So.3d 170. If evidence is derived from an unreasonable search or seizure, the proper remedy is to exclude the evidence from trial. Id. A defendant who is adversely affected may move to suppress any evidence from use at the trial on the merits on the ground that it was unconstitutionally obtained. LSA-C.Cr.P. art. 703 A.
As a general rule, searches and seizures must be conducted pursuant to a validly executed search warrant or arrest warrant. State v. Holmes, 08-719, p. 6 (La.App. 5 Cir. 3/10/09), 10 So.3d 274, 278, writ denied, 00-0816 (La.1/8/10), 24 So.3d 857. A search warrant may be issued only upon probable cause to establish to the satisfaction of a magistrate, by the affidavit of a credible person, particularly | describing the person or place to be searched and the things to be seized. State v. Lee, 05-2098, p. 14 (La.1/16/08), 976 So.2d 109, 122, cert. denied, 555 U.S. 824, 129 S.Ct. 143, 172 L.Ed.2d 39 (2008) (citing LSA-Const. art. 1, § 5; LSA-C.Cr.P. art. 162); State v. Johnson, OS-265, pp. 4-5 (La.App. 5 Cir. 8/19/08), 994 So.2d 595, 598. Probable cause for the issuance of a search warrant “exists when the facts and circumstances within the affi-ant’s knowledge and of which he has reasonably trustworthy information, are sufficient to support a reasonable belief that an offense has been committed and that evidence or contraband may be found at the place to be searched.” Lee, 05-2098 at 14, 976 So.2d at 122. An affidavit supporting a search warrant is presumed to be valid and the defendant has the burden of proving that the representations made in the affidavit are false. Johnson, 08-265 at 5, 994 So.2d at 599.
The determination of probable cause does not rest on an officer’s subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. Lee, 05-2098 at 14, 976 So.2d at 122. A search warrant must establish a probable continuing nexus between the place sought to be searched and the property sought to be seized. State v. Casey, 99-0023, p. 4 (La.1/26/00), 775 So.2d 1022, 1028, cert. denied, 531 U.S. 840, 121 S.Ct. 104, 148 L.Ed.2d 62 (2000).
The task for a reviewing court is simply to ensure that under the totality of the circumstances the magistrate had a “substantial basis” for concluding that probable cause existed. Lee, 05-2098 at 14, 976 So.2d at 122 (citing Illinois v. Gates, 462 U.S. 213, 236, 103 S.Ct. 2317, 2331, 76 L.Ed.2d 527 (1983)). Within its four corners, an affidavit must contain the facts establishing the existence of probable cause for issuing the warrant. Casey, supra. Moreover, if the magistrate finds the affidavit sufficiently detailed and reliable to show probable cause, the reviewing 1 scourt should interpret the affidavit in a realistic and common sense fashion, being aware that it is normally prepared by non-lawyer police officers in the midst and haste of a criminal investigation. State v. Green, 02-1022, p. 8 (La.12/4/02), 831 So.2d 962, 969. Within these guidelines, courts should strive to uphold warrants to encourage their use by police officers. Id.
In establishing that an informant’s tip is sufficient to provide a basis for a finding of probable cause, the affiant should include statements about the informant’s reliability and about the manner in which the informant obtained the information. State v. Dee, 09-712, p. 10 (La.App. 5 Cir. 2/23/10), 34 So.3d 892, 899, writ denied, 10-705 (La.10/29/10), 48 So.3d 1097. Nevertheless, there are no specific *515 tests to be satisfied by an informant’s tip, and the magistrate may issue the warrant when the totality of the circumstances, viewed in a common sense and non-technical manner, establishes there is a fair possibility that contraband or evidence of a crime will be found in a particular place. Id. at 10-11, 34 So.2d at 899 (citing State v. Barrilleaux, 620 So.2d 1317, 1320 (La.1993)).
When evidence is seized pursuant to a search warrant, the defendant bears the burden of proof at a hearing on his motion to suppress that evidence. See LSA-C.Cr.P. art. 703 D; Johnson, 08-265 at 5, 994 So.2d at 599. The trial court is afforded great discretion when ruling on a motion to suppress, and its ruling will not be disturbed absent an abuse of its discretion. Lee, 05-2098 at 15, 976 So.2d at 122; State v. Haywood, 00-1584, p. 5 (La.App. 5 Cir. 3/28/01), 783 So.2d 568, 574. “Marginal cases should be resolved in favor of a finding that the issuing magistrate’s judgment was reasonable.” State v. Rodrigue, 437 So.2d 830, 833 (La.1983).
In the instant case, the application for search warrant provided in pertinent part as follows:
|9In late July 2009, Lt. Daniel Jewell and Det. William Roniger, both assigned to the Narcotics Section of the Jefferson Parish Sheriffs Office, were contacted by a reliable and credible confidential informant in reference to heroin trafficking occurring on the West Bank area of Jefferson Parish. The confidential informant, who has provided information in the past leading to the seizure of narcotics and the arrests of narcotic traffickers, stated that a black male individual was distributing moderate quantities of heroin from a residence located at 3251 Wall Blvd apartment 3405 Harvey, Louisiana, the Calypso Bay apartment complex.
The confidential informant identified this individual as a tall black male in his 30’s. The confidential informant stated that this black male subject was housing a substantial quantity of heroin and the proceeds from the sale of heroin within the residence of 3251 Wall Blvd apartment 3405. This confidential informant obtained this information through firsthand knowledge of this subject’s illicit narcotics business.
On August 5, 2009, Lt. Jewell and Det. Roniger, along with assisting investigators of the Narcotics Section, established a surveillance of 3251 Wall Blvd apartment 3405. At approximately 6:09 p.m., Det. Kurt Zeagler observed a black male subject, identified as Ronald Kincey, ..., enter the residence. A short time later, Det. Zeagler observed Mr. Kincey exit the said residence, enter a 1999 Chevrolet Lumina ... and leave the apartment complex.
Lt. Jewell and Det. Roniger followed Mr. Kincey who was subsequently stopped by members of the Jefferson Parish Sheriffs Office Traffic Division. During the course of this stop, Mr. Kin-cey was found to be in possession of 64.3 grams of brown powder, which was field-tested positive for the presence of heroin. During an interview with Det. Roniger, Mr. Kincey repeatedly lied about coming from the Calypso Bay apartment complex, stating he had just left his place of employment[.]
Based on our review of the application, we find that the magistrate had a substantial basis for concluding probable cause existed for the issuance of the search warrant. Detective Roniger stated in the affidavit that a confidential informant had told him that he had firsthand knowledge that a tall black male in his thirties was distributing heroin from his residence, and that he was housing a substantial quantity of *516 heroin and the proceeds from the sale of heroin within the residence. The detective also stated in the affidavit that the confidential informant | inwas reliable and credible and had provided information in the past leading to the seizure of narcotics and to the arrests of narcotics traffickers. The detectives set up surveillance of the residence, after which they observed an individual, later identified as Mr. Kinsey, enter the residence and exit shortly thereafter. Although Detective Roniger testified that that individual was acting suspiciously before he went inside the residence, in that he remained in his car for an extended period of time and continuously looked around, those facts were not contained in the affidavit.
The affidavit also reflected that once Mr. Kinsey was stopped for traffic violations, he was found to be in possession of 64.3 grams of heroin. Additionally, Mr. Kinsey repeatedly lied about coming from the Calypso Bay apartment complex, even though the detectives had just followed him from that location. Based on the foregoing facts contained in the affidavit, we find that probable cause for the issuance of the search warrant existed.
Defendant cites State v. McDonald, 503 So.2d 535 (La.App. 4 Cir.1987) in support of his contention that the trial judge erred by denying his motion to suppress. However, we find that McDonald is distinguishable as the affidavit in that case contained no allegation by the reliable informant that he knew from personal knowledge that drug selling was occurring at the residence. Conversely, in the instant case, the affidavit contained the allegation that the reliable confidential informant obtained information regarding the distribution of heroin through firsthand knowledge of the subject’s illicit narcotics business.
Further, even assuming that defendant is correct that the affidavit did not establish probable cause to support the issuance of a search warrant, suppression of the evidence seized pursuant to the warrant is not automatically required. In United States v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the |nSupreme Court created an exception to the exclusion of evidence where a law enforcement officer relies in good faith on a magistrate’s probable cause determination and the technical sufficiency of the warrant.
The Leon court enumerated four instances in which suppression remains an appropriate remedy: (1) where the magistrate or judge was misled by information the affiant knew was false or would have known was false except for a reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; (3) where the warrant was based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the warrant is so facially deficient, i.e., fails to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid. Leon, 468 U.S. at 923, 104 S.Ct. at 3421. None of these factors exist in the instant case, and therefore the evidence was properly not excluded.
Defendant next argues that the trial judge erred by denying his motion to suppress the evidence on the basis that no exigent circumstances existed to permit a warrantless entry into his home. The State responds that exigent circumstances existed to justify securing defendant’s residence. Alternatively, the State responds that even if there were no exigent circumstances, suppression of the evidence would not be required since the detective did not *517 base his probable cause affidavit on anything found while securing the residence.
Officers may temporarily secure a dwelling to protect themselves and to prevent the removal or destruction of evidence to preserve the status quo while obtaining a search warrant. State v. Voltolina, 10-1090, p. 7 (La.App. 5 Cir. 10/25/11), 77 So.3d 1027, 1032 (citing State v. Flores, 10-960 (La.6/18/10), 37 So.3d 997, 998 (per curiam)). In the instant case, Detective Roniger testified that 112after Mr. Kinsey’s arrest, he was questioned by officers at the corner of Lapalco and Wall Boulevard, which he explained was a major thoroughfare in close proximity to the Calypso Bay apartment complex where defendant resided. As such, Detective Roniger was concerned that an unknown person passing by that intersection would contact the occupants of the residence who would, in turn, destroy any evidence within.
Detective Roniger further testified that after Mr. Kinsey was arrested, Detective Zeagler reestablished surveillance at defendant’s residence, and a short time later he observed a tall black male in his mid-thirties arrive at the residence and enter. As such, Detective Roniger thought that someone had already contacted defendant regarding Mr. Kinsey’s arrest. Detective Roniger testified that that was another factor in securing the residence while waiting for the search warrant to be signed. He also explained that the detectives did not begin to search the apartment until the search warrant was signed. In light of the foregoing, we find that the officers were entitled to temporarily secure defendant’s residence to prevent the removal or destruction of evidence while obtaining a search warrant.
Nevertheless, even if exigent circumstances did not exist, we find that suppression of the evidence is not required. In Flores, the supreme court found that even assuming police entry into the residence and initial security sweep of the premises occurred without exigent circumstances or consent, suppression of the evidence was not required since the police would have obtained a valid search warrant, “[b]ecause nothing the officers observed on the premises after their initial entry affected the decision to obtain a warrant, and because the probable cause basis for the warrant application derived not from their observations on the scene but from wholly independent sources, i.e., from a confidential informant and defendant.” State v. Voltolina, 10-1090 at 7, 77 So.3d at 1032 (quoting Flores, \usupra.). Thus, the supreme court explained that the police would have inevitably discovered the contraband in the residence by lawful means. Id.
Likewise, in the instant case, nothing the detectives observed during their securing of defendant’s apartment affected their decision to obtain a search warrant. Detective Roniger based his probable cause affidavit for the search warrant on information provided by the confidential informant and the finding of heroin on Mr. Kinsey shortly after he left defendant’s residence. Based on the foregoing, we find that the mere entry of the police into defendant’s residence without a search warrant did not require suppression of the evidence discovered during the subsequent execution of the search warrant.
The record was also reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); and State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals the following error:
The bill of information shows that defendant was charged with possession of heroin between 200 and 400 grams in viola *518 tion of LSA-R.S. 40:966 C. The waiver of rights form also shows that defendant pled guilty to a violation of LSA-R.S. 40:966 C. However, the correct statutory citation for such a violation is LSA-R.S. 40:966 D(b).
The purpose of a bill of information is to inform a defendant of the nature and cause of the accusation against him as required by the Louisiana Constitution, Article 1, § 13. A clerical error in the statutory citation does not require a dismissal of the bill or reversal of a conviction if the error or omission does not mislead the defendant to his prejudice. LSA-C.Cr.P. art. 464; State v. Varnado, 01-867 (La.App. 5 Cir. 9/13/01), 798 So.2d 191, 194.
In the instant case, defendant was adequately informed of the essential facts of the offense charged and was not misled. Although the statutory citation is |14incorrect on the bill of information, it contains the proper description of the crime. Additionally, the proper description of the crime was also contained in the waiver of rights form. Lastly, the transcript reflects that at the beginning of the guilty plea colloquy, defense counsel advised the trial judge that defendant was pleading guilty to possession of heroin between 200 and 400 grams. Under these circumstances, we find that any error in the statutory citation is harmless.
After review of the record and all applicable law in this case, we fail to find merit in defendant’s argument that the trial court abused its discretion in denying his motion to suppress the evidence. For this reason, the conviction and sentence of defendant Freddie Banks are hereby affirmed.

AFFIRMED

. It is noted that co-defendant, Ronald Kinsey, was charged in the same bill of information with possession of heroin between 28 and 200 grams in violation of LSA-R.S. 40:966 C (Count 3).

. It is noted that this name is spelled as "Kincey” in the bill of information and in the affidavit in support of the search warrant, but "Kinsey” in the transcript during the testimony.

. "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home.” Kirk v. Louisiana, 536 U.S. at 638, 122 S.Ct. at 2459.